# 2000

# APARTMENT BUILDING AGREEMENT

MINIMUM WAGE RATES
2000 - 2003
(See pages 94, 95, 96)

**REALTY ADVISORY BOARD
ON LABOR RELATIONS,
INCORPORATED**

292 Madison Avenue
New York, N.Y. 10017
(212) 889-4100

---

**LOCAL 32B-32J, SERVICE EMPLOYEES
INTERNATIONAL UNION
AFL-CIO**

101 Avenue of the Americas
New York, New York 10013-1906
(212) 388-3800

# 2000

# Apartment Building AGREEMENT

BETWEEN

REALTY ADVISORY BOARD
ON LABOR RELATIONS
INCORPORATED

AND

Local 32B-32J
Service Employees
International Union, AFL-CIO

EFFECTIVE APRIL 21, 2000
TO APRIL 20, 2003



# TABLE OF CONTENTS

| Subject | Page |
|---|---|
| Adoption of Agreement | 1, 10, 25 |
| Annuity Fund | 37-38 |
| Arbitration. | 14-18 |
| Better Conditions | 10-11 |
| Bulletin Board | 73 |
| Call In Pay | 49 |
| Check-off | 6 |
| Classification of Buildings. | 44-46 |
| Commercial Occupancy | 46 |
| Common Disaster | 90 |
| Condemnation | 43 |
| Contracting of Work | 1, 8-10 |
| Cost of Living | 47-48 |
| Day of Rest | 72 |
| Days Off | 11, 49, 51 |
| Death | 87, 89 |
| Definition, Job | 85-86 |
| Disability Benefits Law | 40-41 |
| Discharge | 12,53 |
| Discrimination | 84 |
| Educational and Training Fund | 37 |
| Election Day | 64 |

*(Continued)*

| Subject | Page |
|---|---|
| Employees' Rooms | 85 |
| Employment Agency Fee | 80 |
| Experienced Employee | 76-77 |
| Eye Glasses | 73 |
| Family and Medical Leave Act | 67 |
| Fines | 83 |
| Fire and Flood Call | 73 |
| Firemen | 68-69 |
| First Aid Kit | 73 |
| Garnishments | 86 |
| Governmental Decrees | 89 |
| Grievance Procedure | 12-14 |
| Handyperson | 85-86 |
| Health Fund | 32-35 |
| Hiring | 74-80 |
| Holidays | 11, 61-64 |
| Hours | 11, 48-51 |
| Identification | 88 |
| Inspection of Payroll Records | 5-6 |
| Job Vacancies | 74-80 |
| Jury Duty | 11, 87 |
| Layoff | 22, 74, 77-78 |
| Leave of Absence | 65-67 |

| Subject | Page |
|---|---|
| Legal Services Fund | 37 |
| Licenses | 83 |
| Lie Detector Tests | 91 |
| Life Insurance | 11, 34 |
| Locker | 73 |
| Lockout | 23 |
| Luncheon Period | 11, 49 |
| Management Rights | 12 |
| Meal Money | 50 |
| Military Service | 84 |
| Moving Expenses | 53 |
| Multi-Employer Association | 25-32 |
| Newly Constructed Buildings | 27-28 |
| New Hire Rate | 75-77 |
| Notice of Termination | 53, 70 |
| Overtime | 48-50, 61, 63 |
| Part-time Employee. | 68 |
| Pension | 9, 22, 35-36 |
| Permits | 83 |
| Picketing | 23-25 |
| Preamble. | 1 |
| Pregnancy Leave | 66 |
| Premium Pay | 62 |
| Professional Occupancy | 46 |
| Promotion | 74-75 |

*(Continued)*

*(Continued)*

| Subject | Page |
|---|---|
| Pyramiding | 61 |
| Recall | 77-78 |
| Reducing Force | 18-23 |
| Relief-Employees | 64 |
| Rent Collection | 91 |
| Replacements | 74-75 |
| Rest Room | 73 |
| Safety Fund | 37 |
| Sale | 26, 29-30 |
| Sanitary Arrangements | 73 |
| Schedules | 11, 48-50 |
| Seniority | 74-75 |
| Service Center Visit | 88-89 |
| Severance Pay | 53-54, 80-83 |
| Sickness Benefits | 11, 41-43 |
| Signatory Building | 1, 25-32 |
| Statute of Limitations | 13-14, 53-54 |
| Strikes | 23-25 |
| Sub-Contracting | 8-10 |
| Superintendent | 11, 50-60 |
| Term of Agreement | 92-93 |
| Termination Pay | see "Severance Pay" |
| Tools | 83 |

| Subject | Page |
|---|---|
| Training Fund. | 37 |
| Training Program Required | 86 |
| Trial Period | 75 |
| Unemployment Insurance Law | 40-41 |
| Uniforms | 72 |
| Union Insignia | 73 |
| Union Recognition | 1-2,7-8 |
| Union Security | 2-7 |
| Union Visitation | 87 |
| Utilities | 85 |
| Vacations | 11, 68-72 |
| Vacation Replacement Rate | 71 |
| Voting Time | 64 |
| Wages | 10-11, 46-48, 50-51, 94-96 |
| Wage Differentials | 60 |
| Wage Rates | 94-96 |
| Working Conditions | 10-11 |
| Workweek | 11, 48-50 |
| Work Clothes | 72 |

*(Continued)*

AGREEMENT made as of the 21st day of April, 2000, by and between the REALTY ADVISORY BOARD ON LABOR RELATIONS, INCORPORATED, herein called the "RAB," acting on behalf of various owners of apartment buildings and other employers who become signatory to this agreement, herein severally referred to as "Employer," and LOCAL 32B-32J of the SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, herein referred to as the "Union," acting on behalf of its members and other building service employees to whom this agreement applies and for whom it is the collective bargaining agency.

# ARTICLE I

## Union Recognition and Union Security

1. The Union is recognized as the exclusive collective bargaining representative of all classifications of service employees at each apartment building in New York City, Nassau and Suffolk counties in New York and New Jersey from Route 195 north, which is committed to this Agreement.

Work performed pursuant to the terms of this collective bargaining agreement shall not be performed by persons not covered by the bargaining agreement except as provided in Article II.

1

2. This Agreement, shall apply to all classifications of service employees employed by the Employer. Article II of this Agreement shall also apply to employees of cleaning and maintenance contractors who employ employees in any building committed to this Agreement working in any job category covered by this Agreement.

3. There shall be a Union Shop throughout the term of this agreement in every building where there was a Union Shop under the 1997 Apartment House Agreement and in other buildings whenever it is agreed or determined that a majority of the employees in such buildings are members of or have applied for membership in the Union.

The "Union Shop" requires membership in the Union by every employee in the building as a condition of employment after the thirtieth day following employment or the execution date of this agreement, whichever is later, or in the case of newly organized buildings, after the thirtieth day following agreement or determination that a majority of the employees in such buildings are members of or have applied for membership in the Union, and requires that the Union shall not ask or require the Employer to discharge or otherwise discriminate against any employee except in compliance with law.

2

In the event the Union security provision of this agreement is held to be invalid, unenforceable or of no legal effect generally or with respect to any building because of interpretation or a change of federal or state statute, city ordinance or rule or decision of any government administrative body, agency or subdivision, the permissible Union security clause under such statute, decision or regulation shall be enforceable as a substitute for the Union security clause provided for herein.

4. Whenever the Union files with the RAB and the Employer a claim that a majority of the employees in a building are members of or have made application for membership in the Union, the Union Shop requirement shall be made effective within fifteen (15) days thereafter, unless the Employer or the RAB within ten (10) days, notifies the Union that it requires a determination of that claim.

5. Upon receipt by the Employer of a letter from the Union's Secretary-Treasurer requesting any employee's discharge because he has not met the requirements of this Article, unless the Employer questions the propriety of so doing, he shall be discharged within fifteen (15) days of said notice if prior thereto he does not take proper steps to meet said requirements. If the Employer questions the propriety of the discharge, he shall immediately submit the matter to grievance, and if not thus settled, to

3

the Arbitrator for final determination. If it is finally settled or determined that the employee has not met the said requirements, he shall be discharged within ten (10) days after written notice of the final determination has been given to the RAB and the Employer.

The Employer shall be responsible for unpaid dues after receipt of notice provided for in this section and exhaustion of contractual remedies. The Employer's obligation shall begin fifteen (15) days after such notice or, if the Employer questions the discharge, after the final determination of the arbitrator.

6. The Union will hold the Employer harmless from any liability arising from a discharge asked by the Union pursuant to this Article provided the Employer has done nothing to cause or increase its own liability concerning removal of employees.

7. No building service employee may be employed in any building, except within a tenant's apartment, save by the Employer, without the consent of the Union.

8. During any period in which it is not established that a majority of the employees in a building are members of, or have made application for membership in the Union, it is agreed that all employees who, upon the date this agreement is signed for their building, are members of the Union in good standing in

4

accordance with the Constitution and By-Laws of the Union, and all employees who thereafter become members shall, as a condition of employment, remain Union members in good standing during the life of the agreement.

9. Upon execution of this Agreement the Employer shall furnish the Union and the RAB with a complete list of the names, social security numbers and home addresses and job location of all employees covered by this Agreement and shall notify the Union and the RAB of the names and social security numbers and home addresses and job location of each new employee thereafter employed.

The Employer shall notify the Union and the RAB in writing, as soon as a cancellation of an account becomes effective where Union members are employed and the Employer shall notify the Union when he acquires a new building service job.

10. The Union shall have the right to inspect the Employer's Social Security reports and all payroll records (except the salary of the nonunion Supervisors) in order to determine if this agreement is being complied with. The Union shall have the right to expedited arbitration in the event an Employer fails to comply with this right of inspection. Inspections may also be made by the Union or the Arbitrator at the request of the RAB. The RAB may join the

5

Union at all times, when such examination is made. All Benefit Trust Funds established under this agreement shall have the same right to inspect as the Union but shall also have the right to inspect Supervisor's payroll records where Supervisors are covered by such Funds.

11. Each Employer agrees to deduct the Union's monthly dues, initiation fees, and all legal assessments from the pay of each employee from whom it receives written authorization and will continue to make such deductions while the authorization remains in effect.

The Employer hereby agrees to deduct voluntary political contribution deductions based upon authorizations signed by the employees in accordance with applicable law.

Such deductions will be made from the pay for the first full pay period worked by each employee following the receipt of the authorization, and thereafter will be made the first pay day each month, and forwarded to the Union not later than the twentieth day in each and every current month. Such deductions shall constitute trust funds while in the possession of the Employer.

If the Employer fails to remit to the Union the dues deducted in accordance with this section by the twentieth day, the Employer shall pay interest on such dues at the rate of one per-

6

cent per month beginning on the twenty-first day, unless the Employer can demonstrate the delay was for good cause due to circumstances beyond its control.

If a signatory does not revoke the authorization at the end of a year following the date of authorization, or at the end of the current contract, whichever is earlier, it shall be deemed a renewal of authorization, irrevocable for another year, or until the expiration of the next succeeding contract, whichever is earlier.

The Union agrees to indemnify and save such Employer and the RAB harmless from any liability incurred by reason of such deductions.

12. Nothing in this Article shall be construed as an admission that the Employer or his employees in any particular building are engaged in interstate commerce, in an activity affecting interstate commerce, in the production of goods for interstate commerce, or that any particular building is covered by the provisions of the Labor-Management Relations Act, as amended.

13. In keeping with the extension of Article 1, Section 1, to include New Jersey, Nassau and Suffolk counties in New York and the geographic jurisdiction of the Union, the RAB and the Union will establish a joint industry committee comprised of at least 6 representatives

7

from all sectors of the commercial and residential industry to meet on an ongoing basis, but not less than quarterly. The committee shall review and analyze prevailing market conditions, including wage and rental rates, and develop procedures for resolving union organizational and representation disputes to minimize disruption and conflict, and to promote stable and efficient labor relations and labor conditions.

## ARTICLE II
## Coverage of Agreement
## Sub-Contracting

1. The Employer shall not make any agreement or arrangement for the performance of work and/or for the categories of work heretofore performed by employees covered by this agreement except within provisions and limitations set forth below.

2. The Employer shall give advance written notice to the RAB and the Union at least three (3) weeks prior to the effective date of its contracting for such services, or changing contractors, indicating the name and address of the contractor.

3. The Employer shall require the contractor to retain all bargaining unit employees working at the location at the time the contract was awarded and to maintain the existing wage and

8

benefit structure. The Union may reject any contractor where the contractor has not made proper payments to the Health, Pension, Training, Legal and Annuity Funds or has habitually failed to comply with labor agreements with the Service Employees International Union (SEIU) covering other buildings in New York City in the industry. A rejection of a contractor shall not be arbitrary.

The Employer agrees that employees then engaged in the work which is contracted out shall become employees of the initial contractor or any successor contractor, and agrees to employ or re-employ the employees working for the contractor when the contract is terminated or cancelled. This provision shall not be construed to prevent termination of an employee's employment under other provisions of this agreement relating to illness, retirement, resignation, discharge for cause, or layoff by reason of reduction of force; however, a contractor may not reduce force or change the work schedule without first obtaining written consent from the union, which shall not be unreasonably withheld.

If the contractor fails to comply with any agreement with the Union covering the work which was contracted out, the Employer shall be liable severally and jointly with the contractor for any and all damages relating to unpaid Health, Pension, Training, Legal and Annuity

9

contributions. The Employer's liability shall commence the date it receives written notice from the Union or the RAB of the contractor's failure to so comply.

4. This Article is intended to apply to all employees employed in any building committed to this Agreement and to categories of employees to the extent that such categories of employees are "fairly claimable" by the Union, within existing National Labor Relations Board case law. In the event that the application of this Article, or any part thereof, is held to be in violation of law, then this Article, or any part thereof, shall remain applicable to the extent permitted by law.

## ARTICLE III
## Wages, Hours & Working Conditions

1. The wages, hours, terms and conditions of employment set forth in Article XV of this agreement are hereby made part hereof.

2. Except as otherwise provided herein, the wages set forth in Article XV shall be effective as of April 21, 2000, and all its other terms and conditions shall become effective on the payroll date nearest to April 21, 2000. As to all buildings later adopting this agreement, it shall take effect upon acceptance by the Union.

3. No provision of this agreement shall be construed so as to lower any employee's wage.

10

If employees in any building have in effect a practice of terms or conditions better than those provided for herein, applicable generally to them for wages, hours, sick pay, vacations, holidays, relief periods, jury duty, or group life insurance, such better terms or conditions shall be continued only for employees who have had such conditions. The Arbitrator may relieve the obligations in the preceding sentence if enforcement would work an undue hardship, injustice or inequity upon the Employer.

A change of schedules or duties, so long as required relief and luncheon periods are reasonably spaced, shall not violate this Section, provided the employee, the Union and the RAB are given at least one (1) week's advance written notice and such change is reasonable. The notice for shift changes *i.e.,* change in work hours or days off, shall be three (3) weeks. However, where as of April 21, 2000, an employee (other than a Working Superintendent) regularly received consecutive days off, the practice shall continue, and if any such employee leaves his position for any reason whatsoever, his replacement shall also receive consecutive days off.

11

## ARTICLE IV
### Management Rights

1. The Union recognizes management's rights to direct and control its policies subject to the obligations of this agreement.

2. Employees will cooperate with management within the obligations of this agreement to facilitate efficient building operation.

3. Any employee who is discharged shall be furnished a written statement of reason(s) for such discharge no later than five (5) working days after the date of discharge.

If any employee [other than a Working Superintendent covered in Article XVI] is unjustly discharged, he shall be reinstated without loss of seniority or rank and without salary reduction. The Joint Industry Grievance Committee or the Arbitrator may determine whether, and to what extent, the employee shall be compensated by the Employer for time lost.


## ARTICLE V
### Grievance Procedure

There shall be a Joint Industry Grievance Committee and a grievance procedure:

1. To try to decide all issues not covered by, and not inconsistent with, any provision of this agreement and which are not required to be arbitrated under its terms.

2. To try to decide without arbitration, any issue between the parties which, under this agreement, they must submit to the Arbitrator.

3. The grievance may first be taken up between a representative of management and a representative of the Union. If it is not settled, it may be filed for arbitration.

4. All Union claims are brought by the Union alone and no individual shall have the right to compromise or settle any claim without the written permission of the Union.

5. Any matter submitted to arbitration shall be simultaneously submitted to Joint Industry Grievance Committee.

6. The Committee shall be composed of representatives of the Union and the RAB, who may be present at any meeting. If the Committee meeting is not held before the arbitration date, the meeting will be cancelled.

It shall be the function of the Committee to seek and encourage the settlement of all disputes brought before it.

7. Any grievance, except as otherwise provided herein and except a grievance involving basic wage violations and Pension, Health, Training, Legal and Annuity contributions shall be presented to the RAB in writing within

12                                        13

120 days of its occurrence, except for grievances involving suspension without pay or discharge which shall be presented within 45 days, unless the Employer agrees to an extension. The Arbitrator shall have the authority to extend the above time limitations for good cause shown.

## ARTICLE VI
### Arbitration

1. A Contract Arbitrator shall have the power to decide all differences arising between the parties to this agreement as to interpretation, application or performance of any part of this agreement, and such other issues as are expressly required to be arbitrated before him, including such issues as may be initiated by the Trustees of the Funds.

2. A hearing shall be initially scheduled within two (2) to fifteen (15) working days after either the Union or the RAB has served written notice upon the Office of the Contract Arbitrator, with copy to the other party, of any issue to be submitted. The Arbitrator's oath-taking, and the period, and the requirements for service of notice in the form prescribed by statute are hereby waived. A written award shall be made by the Arbitrator within ten (10) days after the hearing closes. If an award is not timely rendered, either the Union or the RAB may demand in writing of him that the award

14

must be made within ten (10) more days. If no decision is rendered within that time, either the Union or the RAB may notify the Arbitrator of the termination of his office as to all issues submitted to him in that proceeding. By mutual consent of the Union and the RAB the time of both the hearing and decision may be extended in a particular case. If a party, after due written notice, defaults in appearing before the Arbitrator, an award may be rendered upon the testimony of the other party.

No more than one adjournment per party shall be granted by the Arbitrator without consent of the opposing party.

There shall be an expedited arbitration procedure where the contract so provides which shall require the Arbitrator to hear and determine the matter within four (4) weeks after the demand for arbitration is filed.

Due written notice means mailing, telegraphing or hand delivery to the address of the Employer furnished to the Union by the RAB.

In the event that the Union appears at an arbitration without the grievant, the Arbitrator shall conduct the hearing, provided it is not adjourned. The Arbitrator shall decide the case based upon the evidence adduced at the hearing.

3. The procedure herein with respect to matters over which a Contract Arbitrator has

15

jurisdiction shall be the sole and exclusive method for the determination of all such issues, and the Arbitrator shall have the power to award appropriate remedies, the award being final and binding upon the parties and the employee(s) or Employer(s) involved. Nothing herein shall be construed to forbid either party from resorting to court for relief from, or to enforce rights under, any award. In any proceeding to confirm an award of the Arbitrator, service may be made by registered or certified mail, within or without the State of New York, as the case may be.

4. Should either party fail to abide by an arbitration award within two (2) weeks after such award is sent by registered or certified mail to the parties, either party may, in its sole and absolute discretion, take any action necessary to secure such award including but not limited to suits at law. Should either party bring such suit it shall be entitled, if it succeeds, to receive from the other party all expenses for counsel fees and court costs.

5. Grievants attending grievances and arbitrations shall be paid for their regularly scheduled hours during such attendance.

6. If a grievant requires an employee of the building to be a witness at the hearing and the Employer adjourns the hearing, the employee witness shall be paid by the Employer for his

16

regularly scheduled hours during attendance at such hearing. This provision shall be limited to one employee witness.

7. The RAB shall be deemed a party to any proceeding under this article.

8. The parties have agreed to an Office of the Contract Arbitrator-Building Service Industry. The Union and the RAB have appointed the following Panel of Arbitrators:

| | |
|---|---|
| John Anner | Theodore H. Lang |
| Stuart Bauchner | Marilyn M. Levine |
| Noel Berman | Randi Lowitt |
| Nicholas Cooney | Earl Pfeffer |
| John Dorsey | William Schecter |
| Howard C. Edelman | Bernard Young |
| Robert J. Herzog | |

Upon thirty (30) days written notice to each other, either the Union or the RAB may terminate the services of any Arbitrator on the panel. Successor or additional Arbitrators shall be appointed by mutual agreement of the Union and the RAB. In the event of the removal, death or resignation of all of the Arbitrators, the successors or temporary substitute shall be chosen by the Union and the RAB. If the parties are unable to agree on a successor, then the Chairman of the New York State Employment Relations Board shall

17

appoint a successor after consultation with the parties.

The cost of the Office of the Contract Arbitrator shall be shared in a manner determined by the Union and the RAB.

## ARTICLE VII
### Reduction of Force

1. The Employer shall have the right to reduce its work force in the following circumstances, provided that it can establish that the changes listed below eliminate an amount of work similar to the proposed reduction in worker hours:

(a) A change in work specifications or work assignment which results in a reduction of work

(b) Elimination of all or part of specified work

(c) Vacancies in building

(d) Reconstruction of all or part of building

(e) The tenant performing the work himself

(f) Introduction of technological advances

(g) Change in the nature or type of occupancy

18

2. If the Employer desires to reduce its work force he is required, in addition to their accrued vacation credits and termination pay, if any, to give employees employed for one (1) year or more one (1) week's notice of layoff or discharge, or in lieu thereof, an additional week's pay. The Employer shall give four (4) weeks written notification to the Union and the RAB.

The Employer shall include in such notification the following:

(a) Reason for reduction, specifying whether the reduction is being made pursuant to one or more of the reasons set forth in Section 1 or Section 5 of this Article.

(b) If other work, notification should include the precise work to be eliminated, setting forth the work hours spent on each task to be eliminated and the change in schedules and duties of remaining employees resulting from the reduction in force.

(c) If the reduction is due to technological advances, the notice shall describe the technological advance; how it will reduce the work, the number of work hours or reduced work and the change in schedules and duties of remaining employees resulting from the reduction in force.

(d) If the reduction in force is proposed to be implemented pursuant to Section 5 of this Article, the notice shall so state. It shall include

19

a detailed description of the work being performed by those allegedly working at an unusually slow pace or having idle time; a description of additional work that such employees should be performing within their normal working hours; the proposed reduction of force in work hours; change in schedules and duties of remaining employees resulting from the reduction in force. The notice shall include both present and proposed work specifications and schedules.

3. In the event that a reduction in the work force is effected and the reason for the reduction in the work force ceases to exist, then the Employer shall reinstate the work force that existed prior to the reduction in force.

4. If the Union grieves or arbitrates a dispute pursuant to this provision, the following shall apply:

(a) The arbitration shall be expedited and in no event shall be scheduled and heard later than seven (7) calendar days after the Union's request for arbitration.

(b) The Employer shall affirmatively demonstrate that it has eliminated an amount of work similar to the reduction in worker hours.

(c) The arbitrator shall issue his award within seven (7) calendar days after the close of the hearings.

(d) There shall be no adjournments granted without mutual consent.

5. In addition to the reasons provided for in paragraph 1 above, the Employer shall have the right to reduce the work force where in those exceptional cases it can demonstrate to a Special Committee consisting of the Trustee/President of the Union or his designee and the President of the RAB or his designee, that an employee has idle time or is working at an unusually slow pace. In the event the Employer claims such an exceptional case, it shall give the notice required pursuant to this provision and the date required by paragraph 2 hereof.

At the conclusion of the four (4) week notice period provided for in paragraph 2, the matter shall be referred to the Special Committee. Such Committee shall act within four (4) weeks after the Employer has given notice to the Committee. If the Committee deadlocks or if the Committee fails to act within said four (4) week period, the Employer may refer the matter to arbitration pursuant to the arbitration provisions of the contract. The matter shall be heard within four (4) weeks after it is submit-

20

21

ted, and a decision shall be rendered within four (4) weeks of the close of the hearing. No adjournments shall be granted without mutual consent.

The Employer may not reduce the work force as proposed prior to the arbitrator's award, provided, however, that if the arbitrator fails to issue his award within the prescribed period, the Employer may reduce the work force as proposed, subject, however, to the ultimate determination of the arbitrator.

6. In the event that the four (4) weeks notice provided for herein is not given and the Employer lays off employees pursuant to this provision, the Employer shall pay an amount equal to the laid off employees' wages and fringe benefits (including, but not limited to Pension, Health, Training, Legal and Annuity Fund Contributions, Holidays, Vacation, Sick Pay and Premium Pay) for the period beginning with the layoff until four (4) weeks after the Employer notifies the Union or the issuance of a final arbitration award, whichever is sooner, but in no event less than four (4) weeks even if the layoff is upheld by the arbitrator.

The fact that payment of employees' wages and fringe benefits are provided for herein shall in no way be construed as a limitation of the arbitrator's power and authority under other provisions of this Agreement.

Where an Employer has more than one (1) case under subparagraph 5, in a building, it may consolidate such cases for purposes of proceeding before the Special Committee and/or the Arbitrator.

## ARTICLE VIII
### No Strikes or Lockouts

1. There shall be no work stoppage, strike, lockout or picketing except as provided in Sections 2, 3, and 4 of this Article. If this provision is violated, the matter may be submitted immediately to the Arbitrator.

In the event of an alleged violation of this Article, the RAB or the Union may, by telegram, request an immediate arbitration. The Office of the Contract Arbitrator shall schedule a hearing on the alleged violation within 24 hours after receipt of said telegram. The Arbitrator shall issue an award determining whether or not said alleged strike or lockout is in violation of the collective bargaining agreement and award appropriate remedy. This is a procedural provision intended only to bring the arbitration on more quickly.

2. If a judgment or Arbitrator's award against the Employer for Health, Pension,

22

23

Training, Legal and Annuity Fund payments or wages or an award or judgment against a contractor for these or other payments is not complied with within three (3) weeks after such award is sent by registered or certified mail to the Employer or contractor at his last known address, the Union may order a stoppage of work, strike or picketing in the building involved to enforce the award or judgment, and it may also thereby compel payment of lost wages to any employee engaged in such activity. Upon compliance with the award and/or judgment and payment of lost wages, such activity shall cease.

3. Except as otherwise provided in this Article, should either party fail to abide by an arbitration award within three (3) weeks after such award is sent by registered or certified mail to the parties, either party may, in its sole and absolute discretion, bring an action at law to enforce such award. Should either party commence such suit it shall be entitled, if it succeeds, to receive from the other party all reasonable expenses for counsel fees and court costs. Should either party fail to abide by an arbitration award and fail to commence an action in court to vacate such award within three (3) weeks after such award is served as provided above, the aggrieved party shall have the right to strike and compel payment of lost wages to any employee engaged in strike activ-

ity or lockout without affecting the other terms and conditions of the Agreement.

4. The Union may order a work stoppage, strike or picketing in a building where work previously performed by members of the Union or within the Union's jurisdiction is being performed by persons outside of the bargaining unit anywhere in the building, provided that 72 hours written or telegraphic notice is given to the Employer and the RAB of the Union's intention to do so.

5. The Union shall not be held liable for any violation of this Article where it appears that it has taken all reasonable steps to avoid and end the violation.

## ARTICLE IX
### Signatory Buildings
### Multi Employer Bargaining

This Agreement may be adopted by any apartment building in New York, at any time on or before June 30, 2000, by filing with the Union through the RAB its written assent to this agreement, except that the Union may refuse any assent if the building is already bound by reason of an existing agreement with the Union.

24

25

1. If there is a bona fide sale or other transfer of title of any member building, or a change of control through a lease, or in the case of a noncorporate ownership, if any person or persons completely divest themselves of ownership or control by any arrangement, the successors in ownership or control may, unless they have otherwise indicated their intention not to be bound by this agreement, join the RAB and adopt the contract within forty-five (45) days after such acquisition, provided:

(a) The building is not already bound by another agreement.

(b) Written notice is given to the Union within five (5) days after joining the RAB. Notice shall be given by hand delivery or postmarked not later than the fifth business day.

(c) If the building was covered by any agreement, (1) during such period there is no layoff or change in wages, hours, terms or conditions of employment therein; (2) the new owner or transferee recognizes employee seniority and vacation status; (3) all obligations to employees, and those pursuant to the Health, Pension, Training, Legal and/or Annuity Funds, are fully paid up to the transfer date; and (4) provision is made to pay retroactively any wage underpayments resulting from the building's improper classification under Article

XIV. Any adoption by the Employer shall be deemed to be effective on the date of sale.

(d) A building being converted to cooperative or condominium ownership shall be treated as a newly acquired building upon the effective date of the declaration of the cooperative or condominium plan or transfer of title, or upon the transfer of shares to the first cooperative owners or the sale of first condominium unit, whichever is later.

(e) Any Employer signatory to an agreement with the Union other than this Agreement shall remain bound to the terms of that agreement until its expiration date. If such Employer joins the RAB it may adopt the RAB contract and be fully covered by the terms of the RAB Agreement after expiration of its other agreement and before execution of a new contract provided:

(1) Notice in writing is given to the Union of such adoption prior to the expiration of the other contract,

(2) Such Employer is not in default under the other contract, and

(3) The RAB approves such membership.

2. With respect to newly organized, newly constructed buildings, or remodeled buildings that are tenant occupied, the Employer shall

26

27

have forty-five (45) days to file a commitment to this Agreement after the Union serves a representation notice on the Employer with a showing of majority status of the existing employees, with a copy to the RAB.

Where the time limits provided for in this Article are not complied with, this Agreement shall not be applicable to such building unless the Union agrees to same in writing.

3. This Article notwithstanding, the Union may refuse to accept any building: (a) until it represents a majority of the building service employees; (b) where contributions for Pension, Health, Legal, Training and Annuity Funds are in default for three (3) months or more from the date payment was due; (c) where an award of the Arbitrator has not been complied with; (d) the Employer is in violation of an existing labor agreement with the Service Employees International Union elsewhere in the City of New York; or (e) where during the term of this or the preceding Collective Bargaining Agreement, the Employer has taken a building whose employees are represented by the Union and in which building it has not retained the employees and/ or existing conditions of employment. The right of refusal shall not be exercised in order to require the building to become a party to any other agreement. Before so refusing any building or taking any

further action, the Union shall notify the RAB in writing.

The Union shall not refuse or reject an assent to this Agreement pursuant to any provisions of this Article unless and until the Trustee/President of the Union or his designee and the President of the RAB or his designee have conferred in an effort to resolve any concerns with respect to the pending assent.

4. In the event an Employer intends to terminate his employer-employee relationship under this Agreement, then the Employer shall give the Union and the RAB reasonable written notice prior to the effective date thereof and upon the request of the Union, the Employer shall meet with the Union to negotiate the impact of such termination upon the employees involved. The obligation to negotiate shall be subject to arbitration but failure to agree on the impact shall not be subject to arbitration.

In the event of a change of Employer in a building, the RAB shall use its best efforts to have the succeeding Employer join the RAB and become bound by the terms of this Agreement.

The RAB shall also use its best efforts to encourage all its members who are signatory to this Agreement to adopt this Agreement for

28

29

each of their buildings located within the City of New York (except for the Bronx).

In the event an Employer terminates an employee or employees because of a change in ownership, operation, or control of a building or buildings, and such employee(s) are not offered employment or are not employed by the succeeding Employer in the building or buildings at the then existing wages, hours and working conditions, the terminated employee(s) shall receive severance pay in the amount of six (6) months' pay, in addition to any other accrued payments due under this Agreement.

Nothing herein contained shall be deemed to limit or diminish in any way the Union's right to enforce this Agreement against any transferee pursuant to applicable law concerning rules of successorship or otherwise; nor limit or diminish in any way the Union's or any employee's right to institute proceedings pursuant to the provisions of State or Federal labor relations laws, or any statutes or rules which may be applicable.

5. In the event that the Union enters into a contract, or contracts, or enters into renewals or modifications of a contract, or contracts with any Employer(s) covering apartment buildings which contain new or revised economic terms or other conditions which are effective on or after April 21, 2000, which economic terms or conditions are more favorable to such Employer(s) than the terms contained in this Agreement, the RAB and all its member buildings shall be entitled to and may have the full benefit of any and all of such more favorable terms, upon notification to the Union. This provision may be waived in writing for good cause shown by the President of the RAB or his designee and the Trustee/President of the Union or his designee.

In buildings where wage rates under the category of "others" prior to April 21, 2000, were lower than those provided for in the 1997 Apartment Building Agreement, wage increases agreed to by the Union and the Employers covering said buildings on or after April 21, 2000 shall not be construed as "more favorable" within the meaning of this Article unless the percentage increase in wages of "others" category is lower than that provided for in this Agreement. This provision shall not apply to:

(a) Newly organized buildings during their first contract period;

(b) Buildings in bankruptcy;

(c) Buildings in receivership;

(d) Employees who are solely and exclusively security guards;

(e) One person buildings; and

30

31

(f) Hardship buildings granted relief in accordance with the terms of this Agreement.

The Union shall furnish the RAB a list of present agreements which are more favorable to the Employer than this Agreement.

Any Employer claiming financial hardship in operating a building may request a hearing before a Special Committee consisting of the Trustee/President of the Union or his designee and the President of the RAB or his designee. At such hearing, the Employer shall present proof of financial hardship, including, without limitation, financial statements. The Committee may grant or deny in whole or in part relief from the provisions of this contract. This provision shall not be subject to grievance and arbitration.

### ARTICLE X
### Health, Pension, Training, Legal and Annuity Funds

A. HEALTH FUND

1. The Employer agrees to make payments into a health trust fund, known as the "Building Service Health Fund," to cover employees covered by this agreement who work more than two (2) days in each workweek, including such employees of other Employers in or connected with the industry for whom contributions are paid, with health benefits under such provisions, rules and regulations as may be determined by the Trustees of the Fund, as provided in the Agreement and Declaration of Trust; provided, however, that the Employer may, by making the required payments into the Fund, cover such other of his employees as he may elect, and provided such coverage is in compliance with law and the Trust Agreement.

Employees who are on workers' compensation or who are receiving disability benefits or disability pension shall be covered by the Health Fund until they may be covered by Medicare or thirty (30) months from the date of disability whichever is earlier.

In no event shall any employee who was previously covered for Health Benefits lose such coverage as a result of a change in this provision and the Employer shall be obligated to make contributions for such employees.

2. The Employer shall contribute to the Fund $5486.64 per year for each employee, payable when and how the Trustees determine, to cover employees and their dependent families with health benefits as agreed by the collective bargaining parties, and under such provisions, rules and regulations as may be determined by the Trustees.

The contribution for the period covering July through September, 2000 shall be reduced by $228.61 per employee. The parties may direct

32

33

3. Effective January 1, 2001, the Employer shall pay into the Fund the sum of $38.95 per week for every regular employee.

4. If the Employer has in effect a pension and retirement plan which has been determined to provide benefits equivalent or superior to those provided under the Building Service 32B-J Pension Plan, it may continue such plan provided it continues to provide retirement benefits equivalent or superior to the benefits that are provided under the Building Service 32B-J Pension Plan during the term of this agreement, and it shall be relieved of any obligation to make payments into the Fund.

5. If the Employer has an existing plan as referred to above, it shall not discontinue or reduce benefits without prior Trustee approval and shall remain obligated to the employee(s) for whatever benefits they may be entitled.

6. In no event shall the Trustees or any of them, the Union or the RAB, directly or indirectly, by reason of this agreement, be understood to consent to the extinguishment, change or diminution of any legal rights, vested or otherwise, that anyone may have in the continuation in existing form of any such Employer pension plan, and the Trustees or any of them, the Union and the RAB shall be held harmless by an Employer against any action brought by anyone covered under such Employer's plan asserting a claim based upon anything done pursuant to Section 5 of this Article. Notice of the pendency of any such action shall be given the Employer who may defend the action on behalf of the indemnitee.

C. TRAINING, SCHOLARSHIP AND SAFETY FUND

The Employer agrees to contribute to a Fund which will be administered as part of the Thomas Shortman Training, Scholarship and Safety Fund. The rate of contributions to the Thomas Shortman Fund shall be $104.00 per year for each employee.

In addition thereto, effective July 1, 2000 the employer shall make a one-time payment to the Training Fund in the amount of $228.61 for each employee. In the event that the parties direct an additional reduction of $228.61 in health fund contributions, the employer shall make an additional one-time payment of $228.61 to the Training Fund.

D. GROUP PREPAID LEGAL FUND

The Employer agrees to contribute $182.00 per year per employee to the prepaid Legal Fund payable as the Trustees determine.

E. ANNUITY FUND

The Employer shall contribute $8.00 per week per employee into the Annuity Fund.

36

37

Effective January 1, 2002, the Employer shall contribute $9.00 per week per employee into the Fund. Effective January 1, 2003, the weekly contributions shall be increased to $10.00.

## F. PROVISIONS APPLICABLE TO ALL FUNDS

1. If the Employer fails to make required reports or payments to the Funds, the Trustees may in their sole and absolute discretion take any action necessary, including but not limited to immediate arbitration and suits at law, to enforce such reports and payments, together with interest and liquidated damages as provided in the Funds' trust agreements, and any and all expenses of collection, including but not limited to counsel fees, arbitration costs, fees and court costs.

Any Employer regularly or consistently delinquent in Health, Pension, Training, Legal and Annuity Fund payments may be required, at the option of the Trustees of the Funds, to provide the appropriate Trust Fund with a security guaranteeing prompt payment of such payments.

2. The Trustees of the Funds shall make such amendments to the Trust Agreements, and shall adopt such regulations as may be required to conform to applicable law, and which shall in any case provide that employees whose work comes within the jurisdiction of the Union (which shall not be considered to include anyone in an important managerial position) may only be covered for benefits if the building in which they are employed has a collective bargaining agreement with the Union. Any dispute about the Union's jurisdiction shall be settled by the Trustee/President of the Union and the RAB's President.

3. Employees shall have a waiting period of three months before becoming eligible to be participants in the Funds and no contribution shall be made on behalf of the employees over the three month period.

4. On or after January 1, 2002, any contributions and benefits required hereunder (except annuity) shall be increased by any amount and in the same manner as contributions and benefits may be increased in the Commercial Building Agreement to succeed the presently effective 1999 Commercial Building Agreement, and if in said successor agreement service fees are required to be paid, the same fees shall be required to be paid hereunder.

38

39

## ARTICLE XI
### Disability Benefits Law
### Unemployment Insurance Law

1. The Employer shall cover its employees so that they shall receive maximum weekly cash benefits provided under the New York State Disability Benefits Law on a non-contributory basis, and also under the New York State Unemployment Insurance Law, whether or not such coverages are mandatory.

2. Failure to so cover employees makes the Employer liable to an employee for all loss of benefits and insurance.

3. The Employer will cooperate with employees in processing their claims and shall supply all necessary forms, properly addressed, and shall post adequate notice of places for filing claims.

4. If the employee informs the Employer he is requesting workers' compensation benefits then no sick leave shall be paid to such employee unless he specifically requests in writing payment of such leave. If an employee informs the Employer he is requesting disability benefits then only five (5) days sick leave shall be paid to such employee (if he has that amount unused) unless he specifically requests in writing payment of additional available sick leave.

40

5. Any employee required to attend his Workers' Compensation hearing shall be paid for his regularly scheduled hours during such attendance.

6. Any cost incurred by the Union to enforce the provisions of this Article shall be borne by the Employer.

7. The Parties agree to establish a committee under the auspices of the Building Service 32B-J Health Fund to investigate and report on the feasibility of self-insuring disability and unemployment benefits.

## ARTICLE XII
### Sickness Benefits

1. Any regular employee with at least one (1) year of service (as defined in Section 4 below) in the building or with the same Employer, shall receive in a calendar year from the Employer ten (10) paid sick days for bona fide illness.

Any employee entitled to sickness benefits shall be allowed four (4) single days of paid sick leave per year taken in single days. The remaining six (6) days of paid sick leave may be paid either for illnesses of more than one (1) day's duration or may be counted as unused sick leave days.

41

The employee shall receive the above sick pay whether or not such illness is covered by the New York State Disability Benefits Law or the New York State Workers' Compensation Act; however, there shall be no pyramiding or duplication of Disability Benefits and/or Workers' Compensation Benefits with sick pay.

2. An employee absent from duty due to illness only on a scheduled workday immediately before and/or only on the scheduled workday immediately after a holiday shall not be eligible for sick pay for said absent workday or workdays.

3. Employees who have continued employment to the end of the calendar year and have not used all sickness benefits shall be paid in the succeeding January, one full day's pay for each unused sick day.

Any employee who has a perfect attendance record for the calendar year shall receive an attendance bonus of $100.00 in addition to payment of the unused sick days.

For the purpose of this provision, perfect attendance shall mean that the employee has not used any sick days.

If an Employer fails to pay an employee before the end of February, then such

42

Employer shall pay one additional day's pay unless the Employer challenges the entitlement or amount due.

4. For the purpose of this Article, one (1) year's employment shall be reached on the anniversary date of employment.

Employees who complete one (1) year of service after January 1, shall receive a pro rata share of sickness benefits for the balance of the calendar year.

A "regular" employee shall be defined as one who is a full or part time employee employed on a regular schedule. Those employed less than forty (40) hours a week on a regular basis shall receive a pro rata portion of sickness benefits provided herein computed on a forty (40) hour workweek.

5. All payments set forth in this Article are voluntarily assumed by the Employer, in consideration of concessions made by the Union with respect to various other provisions of this agreement, and any such payment shall be deemed to be a voluntary contribution or aid within the meaning of any applicable statutory provisions.

## ARTICLE XIII
## Building Acquisition by Public Authority

Where a building is acquired by a public authority of any nature through condemnation, purchase or otherwise, the last owner shall

43

guarantee the payment of termination pay and of accrued vacations due to the employees up to the date of transfer of title. The Union will, however, seek to have such authority assume the obligations for payments. If unsuccessful and the last owner becomes liable for such payments, the amounts thereof shall be liens upon any condemnation award or on any amount received by such last owner.

## ARTICLE XIV
## Building Classifications

1. (a) Class A buildings are buildings where the assessed value of the land and building, based upon the 1935 assessment, divided by the number of rooms in the building, gives an assessed value of over $4,000 a room;

(b) Class B buildings are buildings where the assessed value of the land and building, based upon the 1935 assessment, divided by the number of rooms in the building, gives an assessed value of over $2,000 a room, and not over $4,000 a room;

(c) Class C buildings are buildings where the assessed value of the land and building, based upon the 1935 assessment, divided by the number of rooms in the building, gives an assessed value of $2,000 or less a room.

44

(d) All non-publicly financed buildings now or in the future owned cooperatively or in condominium shall be classified Class A and wages shall be paid accordingly.

2. In classifying buildings completed and opened for occupancy after the levying of the 1935 assessment, the first year of assessment shall control. Where a building is newly erected or remodeled and opened for occupancy after April 21, 1976, and where its proper classification as finally determined indicated that the employees had been paid wages lower than required under said classification, employees shall be paid retroactively all amounts they would have received under the proper classification.

3. In calculating the number of rooms, a room shall be considered to be a rentable room enclosed by four (4) walls, with a door and with a window facing a street, court, areaway or airshaft.

4. Bathrooms shall not be counted as rooms except in apartments of three rooms or less, where bathrooms shall be counted as half-rooms, but this provision shall not cause a revision of existing classifications.

5. Rooms occupied by the superintendent and servants, if above cellar or basement level, shall be included in the total number of rooms.

45

6. Where stores are on the ground floor, the number of rooms on that floor shall be considered to be the same number, less three, as on a typical floor.

7. When eighty (80) percent of a building's area and total number of units are changed to commercial and/or professional occupancy, it shall be considered a commercial building no longer covered under this agreement but shall be covered under the applicable Commercial Building Agreement.

## ARTICLE XV
## Wages and Hours

### A. BUILDING SERVICE EMPLOYEES OTHER THAN WORKING SUPERINTENDENTS

1. (a) Effective April 21, 2000, each employee covered hereunder shall receive a wage increase of fifty-two and one-half cents (52½¢) for each regular straight-time hour worked.

(b) Effective April 21, 2001, each employee covered hereunder shall receive a wage increase of fifty-two and one-half cents (52½¢) for each regular straight-time hour worked.

(c) Effective April 21, 2002, each employee covered hereunder shall receive a wage increase of fifty-two and one half cents (52½¢) for each regular straight-time hour worked.

46

(d) Additionally, the minimum hourly rate differentials for handypersons including all employees doing similar or comparable work by whatever title known, shall be increased by five cents (5¢), five cents (5¢) and five cents (5¢), effective April 21, 2000, April 21, 2001, and April 21, 2002, for each regular straight-time hour worked, and each such employee shall receive a wage increase in an amount necessary to bring them up to the new contract minima.

(e) Effective April 21, 2001, in the event that the percentage increase in the cost of living [Consumer Price Index for the City of New York Metropolitan Area (New York-New Jersey) Urban Wage Earners and Clerical Workers] from February 2000 to February 2001, exceeds 6½% then, in that event, an increase of $.10 per hour for each full 1% increase in the cost of living in excess of 6½% shall be granted effective for the first full workweek commencing after April 21, 2001. In no event shall said increase pursuant to this provision exceed $.20 per hour. In computing increases in the cost of living above 6½%, less than .5% shall be ignored and increases of .5% or more shall be considered a full point. Any increases hereunder shall be added to the minima.

(f) Effective April 21, 2002, in the event that the percentage increase in the cost of living

47